**FEDERATION OF FLY FISHERS,**
**et al., Plaintiffs,**

v.

**William M. DALEY, Secretary**
**of Commerce, et al.,**
**Defendants.**

**No. C99–0981 SI.**

United States District Court,
N.D. California.

Jan. 10, 2002.

Order amending decision Feb. 19, 2002.

Deborah S. Reames, Earthjustice Legal Defense Fund, San Francisco, CA, Michael R. Sherwood, Earthjustice Oakland, CA, for plaintiffs.

Charles C. Carson, U.S. Department of Justice, Environment & Natural Resources Division, Wildlife & Marine Resources Section, Washington, DC, Lois J. Schiffer, U.S. Department of Justice, Environment & Natural Resources Division, General Litigation Section, Washington, DC, Robert S. Mueller, III, U.S. Attorney's Office, Oakland, CA, David W. Hoskins, U.S. Dept. of Justice, Wildlife and Marine Resources Section, Environment and Natural Resources Division, Washington, D.C., James A. Coda, U.S. Attorney's Office, San Francisco, CA, for defendants.

## ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

ILLSTON, District Judge.

On October 5, 2001, the Court heard argument on plaintiffs' motion for award of attorneys' fees and costs. Having carefully considered the arguments of the parties and the papers submitted, the Court GRANTS IN PART plaintiffs' motion.

### BACKGROUND

This is a motion for fees and costs incurred by plaintiffs in an action challenging a Final Rule of March 19, 1998 by the Secretary of Commerce, acting through the National Marine Fisheries Service ("NMFS"), not to list the Klamath Mountains Province Evolutionarily Significant Unit ("ESU") of steelhead as a threatened species under the Endangered Species Act ("ESA"). Plaintiffs brought this action un-der the citizen suit provision of the ESA, 16 U.S.C. § 1540(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). On October 25, 2000, this Court filed an order granting plaintiffs' motion for summary judgment, denying defendants' cross-motion for summary judgment, and remanding to defendant secretary for further consideration and decision. *See Federation of Fly Fishers v. Daley,* 131 F.Supp.2d 1158 (N.D.Cal.2000). This Court held that the NMFS's reliance on future conservation actions in making its listing determination was not permitted by the ESA and that the NMFS's decision not to list the Klamath Mountains Province ESU was arbitrary and capricious.

Before the Court is plaintiffs' motion for award of attorneys' fees and costs. While the Court previously suggested that the parties resolve the amount of the award between themselves, they have not been able to do so. It is left to the Court to determine the issue of fees and costs.

### DISCUSSION

Plaintiffs move the Court for an award of costs, including reasonable attorneys' fees, pursuant to the Endangered Species Act, 16 U.S.C. § 1540(g)(4). In the alternative, they claim that they are eligible for fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).

Defendants contend that fees should not be awarded pursuant to the ESA. Furthermore, they argue that whether or not fees would otherwise be warranted under the EAJA, plaintiffs did not seek fees under that statute in a timely manner. Plaintiffs' initial application for fees sought an award only under the ESA and did not mention the EAJA. Therefore, defendants argue that plaintiffs are not entitled to receive any fees in this action. Plaintiffs maintain that fees are warranted under the ESA,

but argue that if this Court were to disagree, awarding fees under the EAJA is appropriate despite their failure to specifically list it as a grounds for fees in their original motion for attorneys' fees.

The standards for obtaining fees under the two statutes are different. For instance, under the EAJA, fees may be awarded only when the Court finds that the Government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The EAJA contains a statutory fee rate of $125 per hour which can be adjusted upward, while the Court has discretion to award "reasonable" attorneys' fees under the ESA. The threshold question for the Court, then, is whether fees may be awarded under the ESA in this case.

## 1. Statutory Basis for Plaintiffs' Fee Claim

Plaintiffs contend that they are entitled to fees and costs under the citizen suit provision of the ESA. Section 1540(g)(1) of the ESA authorizes citizen suits to enforce the ESA under certain circumstances. 16 U.S.C. § 1540(g)(1). Section 1540(g)(4) states: "The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4).

Plaintiffs asserted two causes of action in their complaint. The first claim for relief, for violation of the ESA, was asserted under 16 U.S.C. § 1540(g)(1)(C), which would qualify plaintiff for relief under the ESA fee provision set out above. *See* Compl. ¶ 44. Plaintiffs' second claim for relief was for violation of the APA. Both parties agree that fees in APA actions are awarded exclusively under the EAJA.

■ Defendants now claim that the ESA is not the appropriate statutory basis for plaintiffs' fee claim. First, they argue that this Court ruled that the NMFS's decision not to list the steelhead ESU violated the APA and did not make a finding that defendants violated the ESA. They claim that the Court's focus was on an analysis under the APA of the balance struck between the "best scientific evidence" on the one hand, and the states' conservation efforts on the other. *See* Defs.' Opp'n, 8:4–6. An award of attorneys' fees is appropriate under the ESA only to the prevailing party in the litigation. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 n. 1, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Defendants contend, then, that because plaintiffs did not have success on the merits of their ESA claim, fees are not due to them under that statute.

### A. This Court Determined that Defendants Violated the ESA

Defendants simply misconstrue this Court's holding. Plaintiffs' first claim for relief was for violations of the ESA. *See* Compl. ¶¶ 35–44. The ESA contains two sections relevant to the first cause of action. The first, § 1533(a)(1), mandates that the Secretary determine whether any species is an endangered or threatened species based on consideration of five listed factors. The fourth of those factors is "the adequacy of existing regulatory mechanisms." 16 U.S.C. § 1533(a)(1)(D). The second section, § 1533(b)(1)(A), describes the basis upon which the Secretary is to make the listing determinations required by subsection (a)(1). The most relevant segment of subsection (b)(1)(A) reads: "The Secretary shall make determinations ... solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those

efforts, if any, being made by any State ... to protect such species...." 16 U.S.C. § 1533(b)(1)(A). In the first claim for relief, plaintiffs specifically cited the statutory "basis for determinations" set out in subsection (b)(1)(A) and argued that the Secretary violated the requirement therein that he take into account only those efforts being made by states that are currently operational and enforceable. Considering state conservation efforts that were not currently operational, they claimed, was a violation of §§ 1533(a)(1) and 1533(b)(1)(A) of the ESA. *See* Compl. ¶¶ 37, 43.

This Court devoted significant attention to this claim in its summary judgment opinion. *See Federation of Fly Fishers,* 131 F.Supp.2d at 1163–66. Under a section titled "The Endangered Species Act," the Court discussed the substantive guidelines for listing described above and addressed which types of "existing regulatory measures" and "efforts, if any, being made ... to protect a species" the Secretary may consider. 16 U.S.C. §§ 1533(a)(1), 1533(b)(1)(A). Upon analysis of the issue, the Court concluded that "the Secretary may not rely on future conservation actions...." and that "[r]eliance on future action is inconsistent with the aggressive preventive posture of the ESA...." *Federation of Fly Fishers,* 131 F.Supp.2d at 1165.

Plaintiffs plainly alleged in their complaint that consideration of future actions was a violation of the ESA. This Court agreed that considering these actions was inconsistent with the language and purpose of the ESA. This finding has as its natural consequence the determination that the NMFS was in violation of that statute when it considered factors outside of the mandatory provisions of Sections 1533(a)(1) and 1533(b)(1)(A). Although

this Court did not explicitly state that defendants violated the ESA, the Court's determination that consideration of the planned state conservation efforts was improper amounted to the same thing.

■ This Court's ultimate conclusion, though not explicitly stated in the opinion, was that defendants' determination that the Klamath Mountains Province ESU did not warrant listing as an endangered species violated both the Endangered Species Act and the Administrative Procedure Act. Plaintiffs' motion for summary judgment included two claims, one of which was clearly titled: "Violations of the Endangered Species Act." *See Compl.,* ¶¶ 35–44. The motion was granted in whole, not in part. Plaintiffs were therefore justified in seeking fees under the ESA.

**B. Plaintiffs Were Not Precluded from Bringing Suit Under the ESA Citizen Suit Provision**

Defendants also now contend, for the first time, that plaintiffs were challenging a discretionary decision by the NMFS, and as such were precluded from bringing suit under § 1540(g)(1)(C) of the ESA, the statutory basis plaintiffs cited for this Court's judicial review of the Secretary's acts.[1] Section 1540(g)(1)(C) allows citizen suits "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is *not discretionary* with the Secretary." 16 U.S.C. § 1540(g)(1)(C) (emphasis added). Defendants claim that the decision not to list the Klamath Mountains Province ESU was an exercise of discretion by the Secretary because it involved balancing factors including scientific and commercial data and state conservation efforts. They contend that this type

---

1. Defendants never made this argument during the pendency of the proceedings. As a result, this Court operated under the assumption that the first claim for relief was properly before it throughout the adjudication of this case.

of discretionary decision is subject to judicial review under the APA—not the ESA. Defendants further argue that the decision by the Supreme Court in *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), precludes ESA claims such as this one because they challenge the substance of a decision by the Secretary.

Plaintiffs brought their ESA cause of action under 1540(g)(1)(C), which allows challenges of non-discretionary decisions by the Secretary. The Supreme Court, in *Bennett*, explained that suits may be brought under this subsection to challenge decisions that ignore the required procedures of decisionmaking. In *Bennett*, plaintiffs challenged a decision on the basis of the fact that defendants had failed to take into account the possible economic impact of the decision, as specifically required in the statute. The *Bennett* decision explained:

> [T]he fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical requirement that, in arriving at his decision, he "take into consideration the economic impact, any other relevant impact" and "use the best scientific data available." It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.

**2.** The Ninth Circuit has recognized that *Bennett* did not close the door on citizen suits as a means of enforcing the provisions of the ESA. In a recent case, the Ninth Circuit held that a citizen plaintiff had standing to file suit under § 1540(g) to challenge the refusal of a state agency to consult with a timber company about the effect that an incidental take permit might have on two other species. *Environmental Protection Information Center v. The Simpson Timber Company*, 255 F.3d 1073 (9th Cir.2001). According to the Court:

> Although the *Bennett* court held that the FWS could not be sued for maladministration of the ESA under 16 U.S.C.

*Id.* at 172, 117 S.Ct. 1154. The Supreme Court recognized that terms stating that the Secretary "shall" take specific action "are plainly those of obligation rather than discretion," and that claims alleging failure to comply with such a mandate come within section 1540(g)(1)(C), allowing judicial review of the claim under the ESA through a citizen suit. *Id.* at 172, 117 S.Ct. 1154.[2]

For this same reason, the NMFS's consideration of states' plans for future action "ignored the required procedures of decisionmaking" under the ESA, and this suit was therefore authorized under 16 U,S.C. § 1540(g)(1)(C). In this case, the statute setting out the required considerations, which is crafted in mandatory language, indicates that the NMFS "*shall* make determinations required by subsection (a)(1) of this section *solely on the basis* of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State … to protect such species. …" 16 U.S.C, § 1533(b)(1)(A) (emphasis added). Moreover, as described above, § 1533(a)(1) mandates that the Secretary determine whether any species is an endangered or threatened species based on consideration five listed factors, including "the adequacy of existing regulatory mechanisms." 16 U.S.C.

§ 1540(g)(1)(A), the Court expressly recognized that citizen suits are a permissible means to enforce the substantive provisions of the ESA against regulated parties—including government agencies like the FWS in its role as the action agency. [citation omitted] Here, EPIC seeks to enforce the substantive obligation imposed on the FWS to ensure that no action authorized by it is likely to jeopardize a threatened species. Accordingly, EPIC has standing to bring this lawsuit under the citizen-suit provision of the ESA.

*Id.* at 1079.

§ 1533(a)(1)(D). This language clearly sets out mandatory, non-discretionary steps that must be carried out by the Secretary in making a listing determination.

Plaintiffs' ESA claim was not simply an effort to have the Court reweigh the issues considered by the Secretary in the determination of whether the steelhead ESU should be listed. Instead, plaintiffs contended that the Secretary considered factors outside the scope of those provided for in the mandatory language of the BSA. Plaintiffs' first claim for relief, titled: "Violations of the Endangered Species Act," clearly alleged that the Secretary's determination was in violation of a *mandatory* duty set out in the ESA. For example, plaintiffs argued: "The Secretary may not, however, base his determination on state efforts to protect the species that are promised to be implemented in the future but are not currently operational, or that are voluntary and unenforceable." Compl. at ¶ 37. Plaintiffs explained that steelhead conservation efforts in California and Oregon are inadequate because "those efforts consist largely of promises of future actions that are speculative and uncertain...." *Id.* at ¶¶ 39–40. Finally, plaintiffs argued that "[t]he Secretary's ... reliance for that determination on Oregon and California state conservation efforts that are not currently operational and/or are voluntary violated the requirement that he take into account only those efforts being made by Oregon and California that are currently operational and enforceable, in violation of sections 4(a)(1) and 4(b)(1)(A) of the ESA...." *Id.* at ¶ 43.

■ The NMFS based its decision on considerations that were excluded under the mandatory language of the ESA. Plaintiffs argued, and this Court found, that the Secretary erred when he considered information outside of the scope set out in the statute. Therefore, as in *Ben-*

*nett,* plaintiffs properly brought this action under § 1540(g)(1)(C) to challenge a non-discretionary act by defendants. As such, this court had jurisdiction under § 1540(g)(1)(C).

## 2. An Award of Fees Under the Endangered Species Act is Appropriate in this Case

Under the citizen suit provision of the ESA, a court may award attorneys' fees to a party "whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). An award of attorneys' fees is "appropriate" under the ESA only where the plaintiffs have: (1) had "some degree of success on the merits," *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); and (2) contributed substantially to the goals of the ESA. *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior,* 748 F.2d 523, 524 (9th Cir.1984). The Ninth Circuit has explained that " 'the dominant consideration is whether litigation by the party has served the public interest by assisting the interpretation or implementation of the ... Act.' " *Id.* at 525 (quoting *Alabama Power Company v. Gorsuch,* 672 F.2d 1, 3 (D.C.Cir.1982)).

Plaintiffs are the prevailing parties in this case. This Court granted plaintiffs' motion for summary judgment, holding that the NMFS violated the substantive guidelines for listing under the ESA and that NMFS decision not to list the Klamath Mountains Province steelhead ESU as a threatened species under the ESA was arbitrary and capricious. Furthermore, this litigation substantially contributed to the goals of the ESA because it resulted in a ruling on the proper interpretation of the statute. As a result of the litigation in the instant case, this Court clarified the information that may be properly considered in listing decisions under

16 U.S.C. § 1533. Listing of a species is important because it sets in motion the other provisions of the ESA, including the protective regulation, consultation requirements, and recovery efforts.

■ Because this suit centered on the ESA and defendants' failures to comply with its mandatory language, all fees and costs will be granted under that statute. The bases of the Court's analysis were the substantive guidelines for listing set out in the ESA and, by extension, defendants' failure to comply with those guidelines. As this Court explained: "the heart of the dispute is whether the Secretary can consider an effort being made, existing regulatory measure, or even a Memorandum of Agreement as in this case, that includes components to be implemented in the future." *Id.* at 1165. Although this Court did explain that "to find voluntary and future actions sufficient to ameliorate the threat to the Klamath Mountains Province ESU was arbitrary and capricious" under the APA, that conclusion was premised on the holding that "NMFS could not rely on future actions in making its determination." *Federation of Fly Fishers* 131 F.Supp.2d at 1169–70 ("The Court finds that most of the plans were in fact proposals for future action. NMFS could not rely on future actions in making its determination.... To find voluntary and future actions sufficient to ameliorate the threat to the Klamath Mountains Province ESU was arbitrary and capricious."). The NMFS's conclusion was based on an erroneous analysis under the requirements set out in the ESA and therefore had to be set aside. The Court's analysis under the APA confirmed that reliance on the forbidden factors led to a decision that was arbitrary and capricious. For the forego-

ing reasons, attorneys' fees are appropriate in this case under the ESA.[3]

### 3. Determination of Reasonable Fee

Plaintiffs seek fees and costs in the amount of $423,778.81, which covers work done by Mr. Sherwood and two assistants on the merits of the case, costs incurred during the pendency of the case, and work done in preparing the motion for fees and reply brief filed in response to defendants' opposition.

The initial determination of reasonable attorneys' fees is calculated by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). There is a strong presumption that this lodestar figure represents a reasonable fee. *See Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). To calculate the lodestar, the court must determine both a reasonable number of hours and a reasonable hourly rate. *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986).

In determining reasonable hours, counsel must submit time records justifying the hours claimed to have been expended. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992) (citing *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933). Those hours may be reduced by the court if the hours expended are determined to be excessive or otherwise unnecessary. *See Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933. Once the fee applicant has provided

---

**3.** This determination is consistent with fee determinations in at least one comparable case. In *Oregon Natural Resources Council v. Daley,* 6 F.Supp.2d 1139 (D.Or.1998), a case involving similar facts and analysis, the court awarded fees pursuant to 16 U.S.C. § 1540(g)(4). *See* Decl. of Michael R. Sherwood, Ex. 1 ("Judgment").

evidence supporting the hours worked, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates,* 987 F.2d at 1397–98. In determining a reasonable hourly rate, the district court must consider the experience, skill, and reputation of the attorney requesting fees. *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986). In addition, the court is guided by the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

## A. Time Expended on the Merits of the Case

### (1) Attorney Michael R. Sherwood

Plaintiffs report that lead attorney Michael R. Sherwood spent 1,037.65 hours on the merits of this case. They claim that his time was "devoted to the normal tasks associated with the careful and conscientious preparation and presentation of a complex federal case." Pls.' Mot., 14: 18–21. This case was pending for more than two years and involved complex issues, so it is not entirely unexpected that Mr. Sherwood would report a large number of hours. Mr. Sherwood's time was spent, among other things, drafting the complaint, reviewing the administrative record, litigating whether the agency properly withheld documents from the administrative record, drafting plaintiffs motion for summary judgment and opposing defendants' cross-motion for summary judg-

ment, and communicating with clients. *Id.* at 14: 20–28.

Plaintiffs explain that the record in this case was extensive and that because the geographic area covered by the Klamath Mountains Province ESU includes both California and Oregon and includes federal land, Mr. Sherwood had to familiarize himself with the content of all three sets of laws and conservation efforts. The administrative record in this case was lengthy, including approximately 10,000 pages, all of which Mr. Sherwood reviewed. Furthermore, both parties submitted lengthy pleadings in connection with the cross-motions for summary judgment. *See* Pls.' Mot., 14. Mr. Sherwood reports that he exercised "billing judgment" in eliminating some hours spent in connection with the merits of this case. *Id.* at 15: 8–9.

Defendants argue that the number of hours Mr. Sherwood spent on the case was unreasonable. They cite the fact that Sherwood required over 475 hours to prepare the summary judgment brief and reply in this case. Together, those briefs were 71 pages. *See* Defts.' Opp'n, 16: 12.[4] Defendants note further that Sherwood spent 24.60 hours preparing for the summary judgment hearing. In addition, they object to the 195 hours reported for time spent seeking to supplement the administrative record and having post-decisional material included in the record. Defendants argue that because Sherwood had recently completed work on a similar case, *Oregon Natural Resources Council v. Daley,* 6 F.Supp.2d 1139 (D.Or.1998), he should have been familiar with the issues involved in this case. Moreover, they argue that this Court's determination of an appropriate number of hours worked on this case should be based in part on the

---

4. Plaintiffs contend that, because the summary judgment motion had to be revised when the Northern California ESU was listed as threatened, that revised summary judgment motion should be counted towards this page total.

time reported by counsel for plaintiffs in that case. Basing their analysis on the number of hours spent per page of summary judgment briefings, defendants calculate that counsel for plaintiff claimed to have spent 4.1 hours per page in that case. Thus, they argue, applying that per-hour rate to this case, plaintiffs may only reasonably claim 291 hours. This total is obtained by multiplying the number of pages written for the summary judgment proceedings by the 4.1 hour per page rate defendants argue is appropriate here. *See* Defts.' Opp'n, 17: 15–20.

This Court is not convinced that comparing hours spent on briefing in this case to time spent in other cases, even when the cases appear to be similar, is the best way to go about determining the appropriate number of hours in this case. Each case involves unique issues and considerations. Therefore, the Court is unwilling to adopt the mechanical comparative approach advocated by defendants.

Having reviewed the materials supplied, the Court finds that reduction of certain hours is warranted because they are excessive; those areas are discussed below. In all areas not discussed below, however, the Court is satisfied that the hours billed are reasonable as stated, and notes that defendants did not object to the number of hours spent on any of these tasks. These areas include consultation with clients, co-counsel, and assistants; communications with opposing counsel and the court; legal and factual research; preparation of the complaint; briefing concerning specific motions; and miscellaneous other tasks.

### (a) Time Spent on Summary Judgment

Mr. Sherwood reports 322.55 hours spent preparing the summary judgment motion in this case. *See* Second Decl. of Michael R. Sherwood, p. 11. While the issues addressed in the summary judg-

ment motion were complex and the motion itself was lengthy, having reviewed the pleadings and the arguments of counsel, the Court finds that the number of hours must be reduced. Furthermore, Mr. Sherwood reports 23.50 hours spent preparing a revised summary judgment motion, presumably necessary as a result of the listing of the Northern California ESU, eliminating that issue from this suit. Plaintiffs present no evidence as to why revision of the summary judgment motion after the decision to list the Northern California ESU involved more than simply redacting arguments about that ESU from the pleadings.

■ Having reviewed the summary judgment pleadings and the record in this case, this Court finds that a more reasonable amount of time spent working on the summary judgment motion would have been **200 hours.** The Court recognizes that this is still a very large number of hours. In light of the complexity of the case and the length of the summary judgment motion, however, this amount of time is warranted. Furthermore, the Court finds that **10 hours** would be a reasonable amount of time to have spent on revising the summary judgment motion. As stated before, plaintiffs have provided no explanation as to why this revision process would require more than 24 hours of work.

As to time spent preparing the reply and opposition to defendant's cross summary judgment motion, Sherwood reports 132.40 hours. Plaintiffs' reply brief was required to assimilate, compress and respond to numerous complex legal issues, so it would not have been unreasonable to work on it for a substantial period of time. However, this court finds that **100 hours** is a more reasonable period to have spent on the reply brief Mr. Sherwood reports having spent 24.60 hours preparing for oral argument on the cross motions for sum-

mary judgment. Given that arguments on the civil calendar in this court rarely last more than one half hour, spending more than 24 hours preparing for that argument is unreasonable. The Court finds that **15 hours** is a more reasonable preparation time.

#### (b) Time Spent Reviewing the Administrative Record

■ The administrative record in this case was lengthy and involved a large number of documents. As lead counsel in this case, it is to be expected that Mr. Sherwood would spend a significant amount of time reviewing that record because what happened during the listing process was at issue in this case. Mr. Sherwood seeks compensation for 158 hours spent reviewing the administrative record in this case. However, Mr. Sherwood is also seeking fees for work done by an assistant who summarized much of the information in the administrative record. Therefore, this Court finds that the length of time spent reviewing the record is duplicative and unreasonable. The number of hours will be cut to **100 hours.**

#### (c) Time Spent on Briefing Concerning Withheld Documents and Extra–Record Documents

Defendants also argue that the 154.45 hours Sherwood claims to have spent in his attempt to challenge the withholding of privileged documents and 40.5 hours spent attempting to augment the administrative record with the declaration of Stanley Yung should be deducted from the total hours claimed because plaintiffs were basically unsuccessful on both claims. As a result of plaintiffs' efforts to augment the administrative record, this Court ordered that five of the 39 documents plaintiff sought to add to the administrative record could not be withheld. Plaintiffs argue that this effort to augment the record was "an integral and inevitable part of the litigation" because "plaintiffs very reasonably believed that it was critical to ensure that the Court have before it the entire administrative record." Pls.' Reply 11: 1–3.

■ Sherwood claimed 40.50 hours spent attempting to augment the administrative record with the declaration of Stanley Yung. Plaintiffs explain that the declaration was intended to show that the California Forest Practice Rules, on which NMFS relied, had been found by the NMFS itself to be inadequate to protect steelhead habitat. However, plaintiffs opted to withdraw the declaration because the NMFS essentially admitted that the rules were inadequate when it reversed its decision not to list the Northern California steelhead ESU. Despite the fact that they later withdrew the declaration, plaintiffs continue to seek reimbursement for time spent on the issue. Defendants claim that they should not be required to pay for this abandoned effort. Plaintiffs are entitled to be compensated for reasonable work done on the case, even when that work is rendered moot by subsequent events outside the control of plaintiffs. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.").

However, the number of hours spent by Mr. Sherwood on these matters is unreasonable. This court finds that the hours for these tasks should be reduced to **100 hours.**

#### (2) Stanley Yung and Ysraelya Horner

Plaintiffs claim that Stanley Yung, a research assistant in Earthjustice Legal Defense Fund's San Francisco office, spent

29.75 hours on the case, "gathering and interpreting factual information as it relates to cases and clients, drafting the factual portions of documents, and analyzing and synthesizing technical studies and information." Pls.' Motion, p. 16. Plaintiffs adequately documented the time spent by Mr. Yung on the case, and Mr. Sherwood reports that some of the hours worked by Mr. Yung were eliminated as part of preparing this request for fees. Ysraelya Homer, a legal assistant, reportedly assisted Mr. Sherwood in reviewing and digesting the lengthy administrative record, and worked 89 hours on the case. Defendants do not challenge the number of hours spent on this case by either Yung or Homer. This court finds that payment for the 29.75 hours spent by Mr. Yung on the instant case is appropriate and that the 89 hours expended by Ms. Homer was reasonable.

### B. Time Expended Preparing Pleadings Related to Claim for Attorney's Fees

██ The Ninth Circuit has indicated that time spent on a fee application can be compensated. *See, e.g., Davis v. City and County of San Francisco,* 976 F.2d 1536, 1544 (9th Cir.1992). Plaintiffs seek the same $350 hourly rate for Mr. Sherwood for his work preparing this claim for attorneys' fees that they do for his work on the merits of the case.

██ Mr. Sherwood was forced to spend more time than would have been expected on the fees dispute because the parties negotiated over a period of several months without reaching a resolution and because defendants raised a number of legal issues in their opposition regarding the applicability of the ESA to this suit that required further research. Still, the number of hours reported by Mr. Sherwood on these motions is excessive. Mr. Sherwood spent 21.7 hours negotiating with the govern-

ment in an attempt to settle the fee claim and 66.8 hours preparing the attorneys' fees claim and supporting documentation. The Court recognizes that the time spent negotiating with the government was necessary and reasonable given that the government raised new legal issues during those negotiations. As mentioned, the attorneys' fees claim by necessity involved more than a simple calculation of hours spent working on the case. However, 66.8 hours spent preparing the claim itself is excessive. That number will be reduced to **50 hours.**

Mr. Sherwood also reports having spent 60 hours on the reply brief in this fees dispute. In addition, plaintiffs seek fees for a recent law school graduate, Greg Loarie, who spent 35.34 hours working with Mr. Sherwood on the reply brief at a rate of $100 per hour. Therefore, plaintiffs claim an additional $25,534 in fees incurred solely in formulating a reply to defendants' opposition to this motion. For the same reasoning set out above, the Court finds that **45 hours** would be a more reasonable amount of time for Mr. Sherwood to spend on the reply. The Court therefore allows for a total of **116.7 hours** (21.7 hours spent negotiating + 50 hours spent preparing motion + 45 hours spent on reply) for Mr. Sherwood's work done on the issue of attorneys' fees and costs in this case. The Court is satisfied that the time spent by the recent law school graduate and the rate sought for him is reasonable.

### C. Appropriate Hourly Rates

#### (1) Attorney Michael R. Sherwood

██ Lead counsel for plaintiffs, Michael R. Sherwood, contends that he is entitled to fees of $350 per hour for his work on this case. This is a reasonable rate considering Mr. Sherwood's background and expertise in this area of law.

In his thirty years of practice, Mr. Sherwood has extensive experience litigating environmental cases before federal courts throughout the country. The Ninth Circuit has held that "[b]oth the Supreme Court and this court have made clear that such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis,* 976 F.2d at 1545. Prevailing hourly rates in the San Francisco area for attorneys of Mr. Sherwood's experience and expertise, according to declarations submitted by plaintiffs, range between approximately $350 and $450 per hour. See Decls. of John D. Hoffman, Trent W. Orr, Michael Traynor.

Defendants argue that plaintiffs have failed to justify Mr. Sherwood's rates because they failed to identify any distinct knowledge or special skill needed for work on this case. The Court disagrees. This case involved complex issues under the ESA, and experience and skill in the field was necessary on the part of counsel. Defendants also submit a copy of a declaration filed by Sherwood's firm filed in a similar case earlier this year in which Sherwood's partner sought $300 per hour as compensation for Mr. Sherwood's work on that case. *See* Decl. of James A. Coda, Ex. 3. Given the evidence cited by plaintiffs about prevailing rates in the Bay Area, the Court is unconvinced that this prior fee request should bind Mr. Sherwood to the same rate set in the previous case. Plaintiffs explain that Mr. Sherwood was local co-counsel in that case, whereas he is lead counsel in the instant case. Counsel in the prior case explains that the firm only sought $300 for Mr. Sherwood's work in that case because he played a minor, non-substantive role in that case and only worked eight hours on the case. *See* Decl. of Todd D. True, ¶¶ 5–7. Aside from the motion for attorneys' fees de-

scribed above, defendants submit no factual evidence in opposition to the proposed fee. Based on the evidence before it, the Court determines that an hourly rate of $350 is reasonable.

### (2) Stanley Yung and Ysraelya Horner

 Stanley Yung was employed by plaintiffs as a research assistant. Based on a declaration submitted by John D. Hoffman, an attorney at the firm of Ellman, Burke, Hoffman & Johnson, it appears that an hourly rate of approximately $150 per hour is customary for experienced paralegals. The proposed hourly rate of $90 for Mr. Yung is therefore reasonable. Ysraelya Homer, who worked under special contract out of her home on this case, is entitled to the proposed hourly rate of $15 per hour.

### D. Costs

Plaintiffs list all costs incurred during the pendency of this lawsuit, including filing fees, postage, copying, and telephone bills. Defendants do not raise any objection and this Court finds that those costs, totaling $1,059.81, are reasonable under the circumstances.

### 4. Total Fees and Costs Due to Plaintiffs

### A. Fees for Michael R. Sherwood

| Subject | Hours Worked |
| --- | --- |
| Consultation with clients, co-counsel and assistants | 35.70 |
| Communications with opposing counsel, court | 13.80 |
| Legal and factual research | 39.65 |
| Preparation of complaint | 52.50 |
| Review of the administrative record | 100.00 |
| Briefing concerning withheld documents and extra-record documents; review of supplemental documents | 100.00 |

| | |
|---|---|
| Preparation of summary judgment motion | 200.00 |
| Preparation of revised summary judgment motion | 10.00 |
| Reply and opposition to defendants' cross summary judgment motion | 100.00 |
| Preparation for oral argument on cross summary judgment motion | 15.00 |
| Briefing concerning defendants' motions for stay and for extension of final rule deadline; plaintiff's motion for clarification of court's order | 56.10 |
| Miscellaneous | 24.40 |
| Negotiation and briefing concerning fees motion | 116.7 |

| | |
|---|---|
| **TOTAL:** | **863.85 hours** |
| Total fees due for Mr. Sherwood: | $302,347.50 |
| Total Costs due: | $ 1,079.81 |
| Total Fees due for Stanley Yung: | $ 2,677.50 |
| Total Fees due for Ysraelya Horner: | $ 1,335.00 |
| Total Fees due for Greg Loarie: | $ 3,534.00 |
| Total Fees and Costs: | $310,973.81 |

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for award of attorneys' fees and costs (docket # 122) is GRANTED IN PART. Defendants are hereby ordered to pay to plaintiffs the above amount *within sixty (60) days of the date of this order.*

**IT IS SO ORDERED.**

## ORDER AMENDING JANUARY 10, 2002 ORDER

On February 15, 2002, the Court heard argument on defendants' motion for amendment of the Court's January 10, 2002 order. Having carefully considered the arguments of the parties and the papers submitted, the Court hereby GRANTS defendants' motion and amends the order as follows:

The last sentence of the Court's January 10, 2002 Order, which states that "[d]efendants are hereby ordered to pay to the plaintiffs the above amount *within sixty (60) days of the date of this order* " is hereby STRICKEN and replaced with the following sentence: "Defendants are hereby ordered to certify to the Judgment Fund of the U.S. Department of the Treasury payment of the above amount to Earthjustice Legal Defense Fund within ten (10) days of the date that a final order in this case becomes unappealable." [Docket No. 157]

**IT IS SO ORDERED.**